IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EARNEST CLEMENTS, } | |
| } | |
|     Plaintiff, } | |
| } | |
| v. } | Case No. 2:08-cv-2186-RDP |
| } | |
| MICHAEL J. ASTRUE, } | |
| Commissioner of Social Security, } | |
| } | |
|     Defendant. } | |

**MEMORANDUM OF DECISION**

Plaintiff Earnest Clements brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c). The court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.      Procedural History**

On October 26, 2005, Plaintiff filed a Title II application for a period of disability and DIB, and a Title XVI application for SSI benefits. (Tr. 51-62). Plaintiff's applications were denied on March 15, 2006. (Tr. 27-34). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 3-7). Plaintiff's case was heard by ALJ Robert Faircloth on September 19, 2007. (Tr. 39, 266-91). In his December 6, 2007 opinion, the ALJ held that Plaintiff was ineligible for disability, DIB, and SSI benefits because Plaintiff's substance abuse disorder is a contributing factor material to the determination of disability. (20 C.F.R. 404.1535 and 416.935). (Tr. 14-24).

Plaintiff was born on July 5, 1955 and completed high school. (Tr. 270). Additionally, Plaintiff was enrolled in vocational classes at a technical college for less than one academic quarter. (Tr. 270-71). Plaintiff worked as a construction supervisor from 1989 until 2003, with the exception of a two year period beginning in 1998, when he worked as a self-employed carpenter. (Tr. 76-84, 271). Plaintiff alleges that he has been unable to engage in substantial gainful activity since July 3, 2003 due to chronic pain and stiffness, inability to concentrate or remember, anxiety, and frequent illnesses. (Tr. 72).

The record shows that Plaintiff abused alcohol for a period of time in 1998 and 1999, leading to legal problems involving several DUI convictions and some jail time for an alleged assault on his son. (Tr. 112). Plaintiff sought treatment on an outpatient basis at the Alethia House and met regularly with a therapist. (Tr. 95-119). The therapist, David Williams, noted some improvement in Plaintiff's condition over the duration of their meetings and was of the opinion that Plaintiff's mental problems were alcohol induced. (Tr. 102, 113).

Plaintiff first sought treatment for his back pain at Quality of Life Health Service in Gadsden, Alabama beginning in 2005. (Tr. 189-90). There, Plaintiff met with Dr. Shah four times in the three months leading up to his submission of his applications for disability, DIB, and SSI benefits. (Tr.183-90). Dr. Shah prescribed numerous medications to alleviate Plaintiff's pain, including Robaxin, Flexeril, and Darvocet. (Tr. 191-201). Dr. Shah advised Plaintiff to stop smoking and also noted improvement in the condition of Plaintiff's back in response to medication. (Tr. 183). However, Plaintiff complained that he could not afford to continue to pay for the medication. (Tr. 178-232).

On January 6, 2006, the Disability Determination Service ("DDS") requested additional information of Plaintiff's disabilities. (Tr. 136). Thus, later that month, Plaintiff saw Dr. Fleming, a clinical neuropsychologist, as well as Dr. Sinha. (Tr. 137-44). Dr. Fleming examined Plaintiff's mental status and cognitive functioning. (Tr. 137-39). He diagnosed Plaintiff with: Axis I - major depressive disorder, recurrent, severe without psychotic features, polysubstance dependence; Axis II - deferred; Axis III - hypertension, chronic back pain; Axis IV - social withdrawal; and Axis V - a GAF score of 45. Dr. Fleming concluded that Plaintiff was probably unable to cope in a normal work environment. (Tr. 139). Dr. Fleming then recommended that Plaintiff seek treatment for depression and substance abuse. (*Id*.).

Dr. Sinha examined Plaintiff's range of motion and assessed his physical pain. (Tr. 140-44). Dr. Sinha found that Plaintiff could bend his back although he experienced some pain from back extension. (Tr. 141). Dr. Sinha also noted some tenderness in other areas of Plaintiff's back, and concluded that Plaintiff had chronic back pain with no significant clinical findings. (Tr. 144).

Plaintiff continued to see Dr. Shah. On April 3, 2006, Plaintiff presented to Dr. Shah with complaints of back pain that he rated as an eight on a scale of intensity. (Tr. 181). Dr. Shah diagnosed Plaintiff with gout and prescribed Naproxin, as well as some other medications for pain. (Tr. 179, 181-82). Plaintiff returned to Dr. Shah on June 1, 2006. (Tr. 179). At that time, Plaintiff rated his back pain as a three on a scale of intensity. (Tr. 179).

To further document his mental impairments, Plaintiff met with Dr. Fleece in February 2006. Dr. Fleece performed a Psychiatric Review Technique similar to the technique the Commissioner must perform pursuant to 20 C.F.R. § 416.920a. (Tr. 145-71). The consultation led doctors in the

office to conclude that Plaintiff's mental problems were not due to depression but instead were the result of substance abuse. (Tr. 171).

Finally, in July 2007, Plaintiff was referred by his attorney to Dr. Storjohann, who conducted yet another psychological evaluation of Plaintiff. (Tr. 234-39). Dr. Storjohann concluded that Plaintiff's ability to make acceptable work decisions would be unreliable and inconsistent. (Tr. 236). Dr. Storjohann set Plaintiff's GAF score at 42. (*Id.*).

## II.   ALJ Decision

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1520(a). First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has a physical or mental impairment, or a combination of such impairments, that is both medically determinable and severe. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner examines the claimant's residual functional capacity ("RFC"), or the claimant's work abilities existing despite his or her impairment. Accordingly, the Commissioner determines whether the claimant's RFC would allow him or her to do past work. Finally, the Commissioner determines whether the claimant's age, education, and past work experience somehow prevent the claimant from adjusting to other work. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

Additionally, when the claimant is an adult, the Commissioner must apply the Psychiatric Review Technique ("PRT") to determine the severity of any alleged mental impairment. *See* 20

C.F.R. § 416.920a. To apply the PRT, the Commissioner must first determine whether the claimant's mental impairment is medically determinable. The Commissioner then rates the claimant's degree of functional limitation in each of the following four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. If the Commissioner finds that the claimant's functional limitations can be characterized as "mild" or "none" in the first three areas and "none" in the fourth area, generally, the mental impairment will not be found to be severe.

If all of the steps are satisfied but there is evidence that the claimant is either a drug addict or an alcoholic, a further inquiry is necessary. *See* 20 C.F.R. § 404.1535. This inquiry requires the Commissioner to determine whether the drug abuse or alcoholism is a contributing factor material to the claimant's disability. In this process, the Commissioner determines which, if any, of the claimant's impairments would remain if the drug or alcohol abuse was stopped. If the remaining impairments would be disabling as defined in the Act, the claimant may receive benefits. If the remaining impairments would not be disabling as defined in the Act, the claimant's drug or alcohol abuse is a material contributing factor and the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweicker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id*.

The ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged July 3, 2003 onset of disability. (Tr. 16). The ALJ determined that Plaintiff has a severe combination of impairments of arthritis of the lumbar spine, hypertension, major depressive disorder and polysubstance abuse. (Tr. 17). The ALJ further held that these impairments meet the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 17). However, the ALJ determined that if Plaintiff stopped his substance abuse, he would not have an impairment or combination of impairments that meet or medically equals any of the impairments listed. The ALJ determined that Plaintiff's remaining impairments would cause no more than mild to moderate restrictions and would not prevent him from performing work activity or his activities of daily living. (Tr. 19).

The ALJ called a vocational expert ("VE") to testify, who was present throughout the hearing and familiar with Plaintiff's background. (Tr. 281-91). The VE testified that a GAF score below 50 constitutes significant evidence that a claimant is unable to work. (Tr. 288-89). The VE also testified that a person with non-transferable skills and mild to moderate pain could work various light and sedentary jobs, and that at least about 6,800 such jobs exist in Alabama. (Tr. 282-85).

### III.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision reversed, or in the alternative, remanded for further consideration. (Doc. # 10, at 12). Plaintiff asserts that this relief should be granted because the ALJ did not properly evaluate the credibility of his complaints of pain and depression, failed to consider his inability to afford medication, and substituted his own medical opinion concerning the severity of his mental impairments, rather than accepting the opinions of Drs. Fleming and Storjohann.

**IV.    Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, this deference given to the ALJ's findings of fact does not extend to this court's determination of the ALJ's application of legal principles. *See Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.    Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ adequately

evaluated Plaintiff's credibility, properly considered Plaintiff's inability to afford medication, and appropriately weighed the various sources of medical evidence.

### A.   The ALJ Properly Evaluated Plaintiff's Credibility

Although Plaintiff correctly notes that an ALJ's legal decisions are reviewed *de novo*, here, the court finds that straightforward legal principles apply in this case and that the ALJ properly applied those legal standards. Indeed, Plaintiff's arguments do not really challenge the ALJ's application of the law. Rather, the whole of Plaintiff's brief deals with whether substantial evidence supports the ALJ's decision. Therefore, with one exception (related to the application of the Eleventh Circuit's pain standard, discussed *infra*), the court will limit its review to Plaintiff's challenges to the ALJ's findings of fact and will apply the substantial evidence standard articulated above.

Plaintiff asserts that the ALJ did not properly evaluate Plaintiff's credibility. In support of this assertion, Plaintiff first argues that the ALJ primarily looked to objective evidence of Plaintiff's medical condition and did not give appropriate weight to Plaintiff's own subjective statements in light of the VE's testimony. However, consideration of objective medical evidence is appropriate in the application of the standard used by the Eleventh Circuit to evaluate a claimant's own subjective testimony about pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Whether the objective medical evidence could reasonably be expected to concur with the pain subjectively complained of is a question of fact. *See Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986). Therefore, the court looks to see if substantial evidence exists to support the ALJ's decision in this regard.

Plaintiff testified that on a scale of one to ten, his back pain on an average day could be characterized as a seven or an eight. (Tr. 272). This, the VE noted, would indicate that Plaintiff was not able to work. (Tr. 285). However, Dr. Sinha found that Plaintiff actually could bend his back and merely experienced some pain on extension. (Tr. 141). Dr. Sinha also noted that Plaintiff had no trouble getting on and off the examination table. (*Id.*). Also, when Plaintiff went to see Dr. Shah in April 2006, Plaintiff reported back pain he rated as an eight. However, when Plaintiff returned to see Dr. Shah approximately two months later, after Dr. Shah prescribed Plaintiff Naproxin, Plaintiff rated his back pain as a three. (Tr. 179-82). This evidence from Dr. Sinha and Dr. Shah belies Plaintiff's testimony. Furthermore, the ALJ specifically relied on much of this evidence in his holding. (Tr. 21-22). Therefore, based on this evidence from the medical records of Dr. Sinha and Dr. Shah, this court finds that the ALJ properly weighed objective medical evidence with Plaintiff's subjective statements in his evaluation of Plaintiff's credibility.

Second, Plaintiff argues that the ALJ's determination that substance abuse was a contributing factor material to his disability was based on remote history – his admitted substance abuse in 1999 – and not on evidence of substance abuse occurring at a time relevant to the instant case. Contrary to Plaintiff's argument, the ALJ's performance of the substance abuse inquiry pursuant to 20 C.F.R. § 404.1535, the ALJ considered not only the evidence of Plaintiff's substance abuse in 1999, but also the records of the 2006 examinations of Drs. Fleming and Shah, which also contained evidence of substance abuse. (Tr. 18). Dr. Fleming's January 20, 2006 examination diagnosed Plaintiff with polysubstance dependence and recommended therapy and medication to deal with his substance abuse. (Tr. 137-39). Dr. Shah also noted and addressed Plaintiff's substance abuse in 2006. (Tr. 179-208). As stated above, the ALJ considered both of these sources of evidence in his substance

abuse inquiry. (Tr. 18). Therefore, the court finds that substantial evidence exists to support the ALJ's determination that substance abuse was a contributing factor material to Plaintiff's disability.

### B.     The ALJ Properly Considered Plaintiff's Stated Inability to Afford Medication

Plaintiff also argues that the ALJ did not properly consider his stated inability to afford medication. Plaintiff cites Social Security Ruling 96-7p, which forbids a Commissioner from inferring noncompliance with doctor's requests from failure to continue to use medication "without first considering any explanations that the individual may provide, or other information in the case record, that may explain" such failure. One of the explanations expressly accounted for in the rule is an inability to afford medication. *Id.*

The court first looks to other courts in the Eleventh Circuit that have had the opportunity to address this issue. In *Serrano v. Astrue*, No. 808 Civ. 1171 (M.D.Fla. July 13, 2009), the district court reviewed an ALJ who "did not question Plaintiff about why he missed appointments or failed to have prescriptions filled." *Id.* slip op. at 8. The ALJ apparently had also failed to adequately consult the record, as evidence of an allergic reaction to one the prescribed medications was apparently ignored. *Id.* The court held that the ALJ should have sought some explanation for the refusal to continue medication. *Id.*

Plaintiff asserts that the ALJ did not properly consider his proffered explanation for failure to continue use of prescribed medications and, thus, improperly drew negative inferences from this failure. However, in this case, the ALJ heard Plaintiff's statement that he could not afford medication at the hearing, though it was during questioning by Plaintiff's attorney and not by the ALJ. (Tr. 272). The ALJ expressly considered this explanation in his opinion. (Tr. 23). SSR 96-7p

only forbids such inferences when there has not first been a consideration of any explanations a claimant provides. Thus, the ALJ expressly considered Plaintiff's stated inability to afford the prescribed medication and the negative inferences that were drawn based upon Plaintiff's noncompliance with the doctor's recommendations are not inconsistent with SSR 96-7p. The ALJ, thus, properly considered Plaintiff's stated inability to afford medication.[1]

### C. The ALJ Properly Weighed the Evaluations of Dr. Fleming and Dr. Storjohann

Plaintiff also argues that the ALJ wrongfully substituted his own medical opinion rather than accepting the opinions of Drs. Fleming and Storjohann.

Both Drs. Fleming and Storjohann set Plaintiff's GAF at scores below 50. (Tr. 139, 236). These are scores that the VE testified would strongly suggest an inability to work. (Tr. 288-89). However, the real concern arising from the ALJ's alleged disregard of the evaluations of Drs. Fleming and Storjohann is not the resulting disregard of the low GAF scores, but the ALJ's decision to place more weight on the evaluation of Dr. Shah and less weight on the evaluation of Dr. Storjohann; this decision is critical to the disposition of Plaintiff's claim, as Dr. Shah's evaluation revealed the role of Plaintiff's substance abuse in his disability, while Dr. Storjohann's evaluation found no such connection.

First, Plaintiff's assertion that the ALJ placed little weight on the opinion of Dr. Fleming is erroneous. The ALJ gave a detailed account of Dr. Fleming's findings in his opinion. (Tr. 18). Furthermore, the opinion of Dr. Fleming is not particularly helpful to Plaintiff. Although Dr.

---

[1]For example, the ALJ was aware that Dr. Fleming clearly diagnosed Plaintiff with a polysubstance dependance problem, opined that given his history of polysubstance abuse Plaintiff would need assistance managing his funds, and recommended that Plaintiff get treatment for his depression and polysubstance abuse. (Tr. 18, 139).

Fleming set Plaintiff's GAF score at 45, Dr. Fleming also concluded that Plaintiff suffered from polysubstance dependence and mentioned Plaintiff's substance abuse in connection with his depression. (Tr. 139). Thus, Dr. Fleming's findings support the ALJ's conclusion that Plaintiff's substance abuse is a contributing factor material to his disability.

The ALJ also concluded that the opinion of Dr. Storjohann conflicted with the records and conclusions of Dr. Shah. In light of the conflicting medical evidence in the record, this case presents an ALJ finding of fact that must be reviewed under the substantial evidence standard. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

Similar to Dr. Fleming, both Dr. Shah and Dr. Storjohann were sought by Plaintiff to evaluate his mental health. Dr. Shah was apparently Plaintiff's primary doctor throughout the years from 2005-07. (Tr. 179-231). In contrast, Dr. Storjohann was approached by Plaintiff once in 2007 at the behest of his attorney. (Tr. 233). The ALJ noted that Dr. Storjohann's evaluation was legitimate but noted the context of the visit, which was organized by Plaintiff's attorney in preparation for Plaintiff's hearing before the ALJ. (Tr. 22). Additionally, Plaintiff met with Dr. Shah thirteen times over the course of 2005, 2006, and 2007. Plaintiff met with Dr. Storjohann one time in 2007. On the basis of this evidence, the court holds that substantial evidence exists to support the ALJ's decision to give greater weight to the opinion of Dr. Shah than to the opinion of Dr. Storjohann in the face of conflicting medical evidence.

Finally, Plaintiff's argument that the ALJ improperly required objective evidence of pain is off the mark. (Doc. #10 at 6). The assessment of Plaintiff's RFC properly included an evaluation of his subjective complaints in accordance with 20 C.F.R. §§ 404.1529 and 416.929, and pursuant

to Eleventh Circuit case law as set forth in *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). *See also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  These standards require (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  *See Holt*, 921 F.2d at 1223.  Here, the ALJ properly employed the Eleventh Circuit's pain standard, and his findings are supported by substantial evidence.

**VI.  Conclusion**

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff would not be disabled if he stopped his substance abuse is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___24th___ day of February, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE